It has been the law of this circuit, since even before this court was a circuit, that a due process violation divests the removal of legality, leaving the employee on the rolls of the employing agency and entitled to his back pay until proper procedural steps are taken. That is, the employee must be returned to his position as if the unlawful removal had never taken place and remained there until new, correct, and constitutionally adequate procedures are taken. For reasons completely unexplained in this record, Mr. Morrison was not provided that relief. What he was provided instead was a reconstruction, a procedure where the agency said, well, if we hadn't violated your due process, this is what we would have done. We would have fired you anyway. So now, instead of a new, constitutionally correct procedure, Mr. Morrison finds himself in exactly the same position he was in before he proved that his constitutional rights had been violated. Mr. Ketter, I have a question as to whether this is a final order from the MSPB. Are you familiar with the line of cases from our court dealing with final orders in situations in which reconstructions have been ordered? Cases like Weed, Schoenroger, Marshall. Nobody has cited these, so if you're not familiar with them, it's not your fault. I believe we did cite Weed, Your Honor. Weed, you did cite. And Marshall, I filed an amicus. Okay. Well, in each of these cases, just cut to the chase, what each of these cases says is that where you have a remand to an agency, or in the case of the Cummings case, which is one in this series, something that isn't formally a remand, that has the effect of a remand, where the agency has more work to do before the final disposition of the case, then there isn't a final order for us to review from the MSPB. And now, I know this may get you somewhat cold since it wasn't briefed, the government briefed the non-aggrieved argument for non-jurisdiction, but not the final order. Do you have any comment on those cases, if you're familiar with them? A few things. First, Your Honor, if we start with the statute where we must, and I'm sorry, let's back up. This court in Weed said, in the particular context of determinations by the board, we have held that we now look to the board's regulations at 5 CFR 1201.113 to determine what constitutes a final order for jurisdictional purposes. So, the first place we look to determine whether there's a final order is the board's decision. Did the board articulate what it believed to be a final order? And in this case, as we pointed out in our brief, in at least four different places, six total, the board said this is a final order. It said this final order provided the appellate rights. It said, except it's expressly modified by this final order. The prior order is still in effect. So, the board clearly understood that, pursuant to its own regulation, that this was a final order. The other thing that Weed talks about, and of course is the crux of all of this, is is there anything left to be done other than simply complying with the decision? Where there is mere compliance, that does not negate the finality of the order. But I take it there's an ongoing proceeding challenging the removal, which is now, I take it, in pending before the board. Right, it stayed pending resolution of this case. Right. But what's the status of that proceeding? It stayed, Your Honor. It stayed? It simply stayed. Stayed for this decision? Yes, Your Honor. Stayed at the board? Yes, at the board, at the regional office, not at the board. There was an action taken by the agency, and then you appealed from that. Correct, Your Honor. And again... That action that was taken could have been very favorable to you. Theoretically. Well, I think that's what Judge Bryson perhaps was talking about, was the case went back to the agency, and you could have entirely prevailed there. And presumably, I still can't, theoretically. And the arguments that you present here, you could present, if you didn't present them here, you would present them in that case. Let's take that from right there, that point. Well, you could do this another time. The government argues, well, you're too soon. You're too early. You should have come later. And quite frankly, you know that if we'd come later, they would have said, you're too late. You should have come earlier, which is, in fact, what happened in Marshall. But that goes really... They didn't succeed with that argument. They didn't. Because the court said, you wouldn't have been able to appeal from the earlier order. They did say that the earlier order was not final. But that's the difference, Your Honor, between a reconstruction and compliance, in an order to provide status quo ante. Under VIOA, which a Marshall was, the court's remedy is to provide a reconstruction. Say, what would you have done had you not violated this veteran's rights? That's not the standard under CUR, under status quo ante. It's certainly not the standard under this court's precedence and the Supreme Court's precedence when we're talking about a violation of due process. Violation of due process requires that the slate be wiped clean. Do you see there being room for a harmless error argument in the context of a due process violation? Not under this court's precedence. Not under the Supreme Court's precedence. No, Your Honor. Supreme Court in Peralta, is that what you're relying on? Well, Peralta, Coe, Penoyer v. Neff. I mean, the Supreme Court has said, if there's a violation of due process, the judgment is void and it's void for all purposes. Those are particular kinds of due process problems. I take it that there are various types of due process violations that would be deemed due process violations as to which there would be room for a harmless error. Are you saying there's just, once the term due process comes into the picture, there's no harmless error? So I understand that argument, Your Honor, but I believe it's foreclosed by this court's decision in Stone. In Stone, this court said, our system is premised on the procedural fairness at each stage, recognizing that there are multiple stages to these federal employee appeals. At each stage of the removal proceeding, an employee is entitled to a certain amount of due process rights at each stage. And when these rights are undermined, the employee is entitled to relief regardless of the stage of the proceedings. And in Ward, Your Honor, this court was very specific, I think, in saying that when there is a violation of due process, not this particular violation of due process, when there is a violation of due process, we go back to the beginning. It starts over. It is void. It's void for all purposes. And I think that that's what the Supreme Court demands. And there's no reason for it not to. This is due process we're talking about. It's not harmless error. And that's essentially what we have in this case. Well, now, let me, one more question along this line is, where do you discern that this is a due process, the precise violation here is a due process violation as opposed to a violation of board-imposed policy as to the requirements that have to be satisfied in order to get over the involuntary, in order to avoid a finding of involuntary retirement? In other words, let me ask it in a more straightforward way. So the board says, look, if you either give somebody wrong advice or you even unwittingly don't give them the right advice, then we're going to throw out the involuntary retirement. That's essentially the rule as I understand it. What is it in our case law or board law that says that's a due process violation as opposed to a prophylactic rule to protect against the employee involuntary retirement? To rattle off a few, Your Honor. I think Covington says that. I'm not sure I think... As due process as such? I'm not 100% certain that Covington says it that way. I think Garcia does say it. I forget the... I think it's a court of claims case. A decision made with blinders on cannot, as a matter of fundamental fairness, be binding. Okay. I forget the name. Maybe it's Christie. I don't know. I'm sorry. I just don't recall what that was. But no, I think that this court's decisions are replete with references to this being a constitutional violation. And clearly the board, in its decision, recognized it as such, as a due process violation. Can I ask you one other... I'm sorry. No, no. Just one other quick question on the merits. If, supposedly, the agency had entered a letter of removal and then said, okay, we're going to suspend the removal and allow you to retire. So we're entering the order of removal, but we're basically putting it on, you can retire. Would the case come out the same way, in your view? Are you asking me on the merits of the constitutional violation or on relief? On relief. I think it would. I think it's a different question. It's kind of like Baldwin, I think, is the case the government cites, where they said, okay, you're going to be fired on X day. Right. And they gave him advance notice. Right. And he said, well, before that time, I'm going to retire. Right. And then there was confusion about what his health benefits would be. And the board ultimately said, that's a due process violation and you're entitled to reinstatement, retroactive reinstatement, incidentally. I think it's a confusing question, because, again, it's focusing very narrowly on kind of what the consequence of the due process violation is. And I don't think that that's appropriate inquiry. Under the Supreme Court's precedent, it's not. You don't look to say, well, what happened? We violated your constitutional rights, but what happened because of it? That's not the inquiry. The inquiry is, do you have these rights? Were you accorded these rights? And if you were not, then we wipe the slate clean and we start all over. So it's a harder case, I think, to kind of get your hands around. Because it seems like, well, gee, he would have been fired anyway. And I think, Your Honor, that that's just part of the territory. It may be unfair in some sense in that particular case. But on a broader sense, that's what the doctrine requires. And I think it should. OK. Well, all right, we'll save you a full rebuttal time. Let's hear from the government. Thank you very much. Ms. Brubank? Good morning, and may it please the Court. Mr. Morrison is really trying to appeal the removal decision that the agency decided was the appropriate status quo anti-relief. He's attempting to directly have this Court review the agency's decision rather than going first through the MSPB. This Court does not have jurisdiction over that action because the MSPB's order did not make a specific requirement about what the status quo is. Let's assume the issues are before us. And if we need to cut back jurisdictionally, we'll do so. But let's use the time to make sure that we understand and explore what the issues that are before us, the distinction from the concurrent case. I think it would be interesting to know why the appeal on the merits of the firing had been stayed, I gather, at the government's request on the theory that it would be controlled by the decision here. Was that the reason? I don't believe there was a stated reason from the MSPB. The MSPB recognized that if this Court, for example, ordered reinstatement, then there would be... You're saying they stayed it spontaneously without a request from a party? I do not remember. I don't think they do that. I don't remember which party requested or whether it was joint, Your Honor. I can look it up. But the MSPB's order, I believe it dismissed without prejudice and said, file again within 45 days of this Court's decision. And there is a possibility that this Court's ruling, for example, if the Court ordered reinstatement and said that it was not appropriate to have this removal decision effected July 13, 2012, then that would obviate the need for a proceeding on that. So basically, if this Court reaches the merits, depending on how this Court rules, it might affect that appeal. So there are two issues with respect to the removal decision. One is the chain-y line of cases that Mr. Morrison cites, that the due process issues that he might raise with respect to the removal. And that needs to go through the MSPB. That's not before this Court because the agency's decision on the removal, the actual SF-50 that was issued was after the MSPB's decision that's on appeal here. The other issue is the status quo anti-relief itself. Whether it is appropriate for the agency to consider the removal decision when a separate action, the retirement, was reversed. So Mr. Morrison attempts to put them together and say, wipe the slate clean by not just reversing the involuntary retirement, but also reversing the decision to remove that was final. It was signed by the deciding official. Mr. Morrison had been afforded the opportunity to respond and did respond, both orally and in writing, to the notice of proposed removal that was based on his loss of security clearance. The status quo anti-relief, as defined by the MSPB and also this Court, does not mean wiping away more than the infirm decision. It means going back to the status of things before the improper action, which here was the involuntary retirement. Why isn't this case, at least somewhat on the merits of somewhat like Cheney, where one could say, well, Mr. Cheney would have been fired for the subsequent drug violation, so let's look at that and figure out whether he would have been fired. The Court didn't permit that. Are you referring to Jarman, Your Honor? Isn't Cheney the drug case? I believe it's Jarman. Is it Jarman? That's Judge Friedman's opinion. In Jarman, there were a total of three drug tests, and on the second drug test, the agency... Oh, that's right. Cheney was a suspension case, right, Jarman? So in Jarman, there was a drug test, basically the second drug test, that the agency actually went through notice of proposed removal, and in that process, the removal decision was overturned because there were flaws with the drug test. The agency said, well, we never did anything with the third drug test. We never issued a notice of proposed removal. We never did anything on that. But we would have, and we would have removed him. And this Court said, look, you can't know what would have happened in that case. Maybe there would have been the same problem with the drug test in that third drug test as with the second. You can't assume there would have been a process that ended by a certain time and would have come out a certain way. Here, this case is like Baldwin, in which there was a notice of proposed removal, there was an opportunity to respond, and a final decision. Well, there really wasn't a final decision, right? I mean, there was a piece of paper which they decided not to issue as a final decision. And so why isn't that more along the lines of Jarman? The only difference is whether the agency officially issued it, right? The appendix has in it the decision itself, and you can see that it's signed, but has it been signed by Mr. Morris? Well, it's not disputed that it wasn't sent to him. And when you tell us there was an opportunity to respond, I couldn't find that anywheres, that they were saying that this is a notice, he'll be removed with such and such an advanced date, and there will be the traditional internal hearing. I mean, it seems to me that there's also a large amount of precedent with relates to loss of security clearance that requires that there be internal going back to due process and a hearing. And I couldn't find that anywhere in the materials that were sent to us. Your Honor, first of all, the removal decision itself, again, this court doesn't have that final decision on appeal. But the Joint Appendix does explain and show that he was afforded this opportunity to respond, both to the security clearance issue- Can you point out where that is? Yes, Your Honor. Either now or send us a note, because I missed it. I can do it right now, Your Honor. That is a notice of removal, and the opportunity to respond, the internal hearing, the proceedings that are required when you lose your security clearance. That's correct. Your Honor, on the notice of proposed removal itself, the notice is on page- The notice that was never sent to him. No, this was sent to him. The notice of proposed removal was sent to him. The proposed was sent, but the final actual removal was not, as I understand it. What happened, and this is- So if I can just walk through the timeline here. So he was sent the notice of proposed removal. That's on page 109 of the appendix. The final, the decision on proposed removal on page 112 describes his oral and written responses, of which there are several. And then the- I'm sorry, 109 is the limited access, right? I'm sorry, Your Honor. I didn't hear what you said. Okay, so I'm sorry. On page 112, it says he called and left phone messages on the 30th of March, a fax on the 3rd of April, another package on the 5th of April, and another fax after that. The memos that are on page 115 and 116 explain what happened with the decision, which is that Mr. Morrison's supervisor called him into the office, said, I'm about to issue this to you, and instead Mr. Morrison retired. And that retirement decision, so there was no final issuance of this decision, but the decision had already been made. It had been signed. It was just this one small part that had not been done. That was the decision that was not officially sent to him. He was told about it, you say, but he wasn't given- That's correct. My understanding, again, from these two memos on 115 and 116 describe this meeting in the office and said, this is on page 116 from the Chief Clapsdale saying, I explained I'm going to issue a letter to you on behalf of Fire Chief Cox, and this is dated the 13th of July, 2012. So what was the reason why it wasn't officially issued? Because Mr. Morrison, and this is the next part of the sentence, he asked if he could retire instead, and they said yes. You can retire. And that retirement was based on his incorrect understanding about how his retirement benefits would be affected by a removal. And that's the process that the MSPB said that's not appropriate and reversed. But that doesn't also reverse the removal decision process that had happened. It doesn't erase all of that. That's unrelated to the problem that the MSPB identified with the retirement. Can I take us back to Jarman just for a moment to conclude where I think Judge Bryson's doing it? It struck me, I don't know whether this is pertinent or not, but in Jarman, there was an express demand for back pay. And we declined. Jarman asked us to release entitled to receive back pay. We declined to do so. All we hold is we send it back. The back pay issue will be resolved on remand. On your adversary's view of this case, shouldn't Jarman have resulted in automatic back pay? I don't want to speak for him, but I believe that's correct. No, but I mean, his theory of the case, I mean, what I'm saying is it struck me as it was quite important to deciding your adversary's point of view on this case, the fact that in Jarman, there was an express demand to us to order back pay. And the court said, no, there is no back pay in this setting. Right, that the agency and then the MSPB must determine in the first instance what the correct amount is. Well, that's what I mean. Whether or not that didn't decide for this case, your adversary's view that back pay is immediately required now. I think that's right. And that's also— As if we haven't already decided his question. And Baldwin also supports the same idea that the back pay issue of what the actual dollar amount may be is an enforcement issue that doesn't come to this court unless the MSPB has first reviewed the agency's decision, because it is the agency's decision in the first instance to figure out what that back pay is. And the order here explicitly does not decide what the correct amount of back pay will be. It says you'll have to decide whether there would have been this removal as of July 13th, if it would have been later. But in Jarman, wasn't there a possibility in Jarman that when the case went back, the individual could be removed in a time as of a date when there would have been no back pay? I'm not sure how that would have happened in Jarman, given the court's instruction regarding that third drug test. But this court said, you know, figuring out what that back pay would be is something that must be done below first. That is certainly true. Do you agree with Mr. Ketter that the event that triggered the finding of involuntary with respect to the retirement was a due process violation as opposed to a violation of a board-made, perhaps even court-made rule governing how people must be apprised of their rights at the point in which they make a decision to retire? Your Honor, I, standing here, do not have a position on that, because the issue of whether this was an involuntary retirement isn't on appeal here. No, but the issue of whether there's a due process violation and what flows from that is on appeal, and Mr. Ketter strongly urges that any such departure from the board-directed procedures is a due process violation, and hence, there is no room, for example, for harm's error or any other reconstruction-type argument. The due process cases that Mr. Morrison cites are all about removal process, not about this involuntary retirement standard, so I'm not sure that there is, again, I haven't done extensive research. I could certainly provide this court with a position on that, but my understanding of Mr. Morrison's argument about due process relies on cases about removal decisions, not this involuntary retirement, you know, notice about what your benefits will be. This misunderstanding is certainly something that the MSPB has cited, but I'm not sure that it's happened in the context of a due process. Now, let me make sure I understand your position on what are the circumstances in which this reconstruction, if we want to call it that, would be permissible. You're not arguing, I take it, that if they had had the capacity to remove him, but had never gone through the process of issuing a proposed letter of removal, and so forth, you're not arguing that that would be a circumstance in which there could be a remand and reconstruction as to whether there would be a removal, are you? No, Your Honor, I think that's covered by Jamin, for example. Okay, but you're saying that the difference between that case and this case is that signed letter, which just the only thing missing is the handing it to him? That's right, Your Honor. This case is between, you know, Sink and Baldwin, both of which the MSPB said the agency can consider the status of that proposed removal. In Sink, there was a proposed removal, but no final decision. I think that's a little bit further towards the Jamin side of the spectrum. But that's just a board decision, that's not a decision of ours. I don't think that was reviewed. That's correct, Your Honor. And then Baldwin is all the way to the end of the process, where there had been an issuance, and this is just that one. So Baldwin is like my hypothetical to Mr. Cato, where there'd been an issuance, but then it had been not acted on formally. That's correct, Your Honor. And so the MSPB says... That was reviewed by this court. That's correct, and it was affirmed. But here there was no issuance, isn't that right? So not only was it not acted on, there was no issuance. And whether, in fact, and this really is troubling, it wasn't issued. It was tucked away. It was in a personnel file that belonged to the agency. And they said, well, never mind, we could have separated you on such a date. Therefore, you don't even get two weeks' notice that this is what the fallback position is. That's very hard to justify, isn't it? Well, Your Honor, I'm not sure I follow what Your Honor is saying with respect to a fallback position, but he had been afforded notice and an opportunity to respond, and he did respond. The agency was looking back to where things were right before there was this involuntary... Yes, I agree. I accept that. And the agency decided to remove him on such and such a date. Right. But they didn't do so. That's correct. But now they have. They didn't do so, and then they said retroactively, however, we could have, therefore you were, rather than saying we could have, and since we're curing this retroactively, your 30 days' notice of removal or whatever would have been fair, rather than it actually could have happened, therefore school's out. Well, he has the issue of whether he could have appealed the removal decision.  I'm talking about the agency action from the due process viewpoint. Right. And the agency action from the due process viewpoint, he had been given all of the process that he was due right up until the removal decision. There was no other process that he was still... Okay, agreed. And so they decide to remove him, but they don't do it. And they don't do it because he says, I wonder, I'll retire. But then when that falls away, they say, but we could have done it. Therefore, it was done as of such date. That's when your payroll cuts off. That's right. And he had been already afforded all of the process. Does that sound fair to you? Your Honor, he has already received the process that he was due under that notice of proposed removal, and the involuntary retirement being reversed... He wasn't given the final judgment. He was told that it was about to be issued. He was told, you lose, but he wasn't given the notice of removal. And the notice of removal would then trigger his ability to appeal that, which he now has and has filed. And the MSPB has said that it can now... He now has, and they said, and this was effective way back then. Therefore, no pay. That's right, Your Honor. And again, he is being given all of the process that he would have been afforded without the involuntary retirement intervening. Due process to fire someone and not tell him? He was told, and he has been given the opportunity to appeal. The government fires someone with a document for the boss to say, you know, things are over is one thing. But here there was this quite elaborate decision, which wasn't given to him. It has been given to him at this point, Your Honor. He has... So I think the problem of the interim time and... Yeah, you see my problem. I think Your Honor is referring to that interim amount of time between that decision and the fact that there's been all of this process with respect to the involuntary retirement. Now I'm thinking about the notice aspects. Well, okay. Thank you, Your Honor. Anything else you need to tell us? No, Your Honor. Thank you. Okay. We'll hear from Mr. Cater. Mr. Cater, before you get into the substance of your rebuttal, clarify for me what the general landscape is with respect to people who retire in lieu of removal. There are, as I understand it, some cases at least, maybe not this one, but some cases in which removal would indeed influence your entitlement to pension rights. Isn't that correct? Certainly. I mean, for years I keep hearing people retire because they want to preserve their pension rights. It's very complicated, and as time has gone on, it's become more complicated with the different mutations of retirement. For example, Baldwin, he could have gotten an immediate retirement, which would have given him health benefits, or he could have gotten a greater retirement if he waited a couple of years. Okay, but in any event, what I'm trying to focus on is whether there really is risk, maybe not in this case, but in many cases, a risk to the employee of forcing the employer's as opposed to taking the retirement in lieu of being removed. And there is such a risk, is there not? There are sometimes, I mean, there are consequences to resigning rather than being terminated. One of which is you don't have to say to the next employer that I was fired. Not really. I mean, it doesn't work that way anymore because if you're talking about a federal employment, they will ask, were you ever removed from it? Did you ever leave a job? Federal employment, yeah. I would rather retire than be fired, actually. Certainly. Ordinarily, all things being equal, you would rather hold your head high and say, you can't fire me, I quit. Yeah. But it's far more important decisions than ego that go into that now. It just strikes me that potentially the rule that you're asking for actually hurts employees in some respects more than helping them because in many instances, the agency's response to a decision that, no, no, you get back pay even if you were prepared to issue an order of removal and instead took the guy's retirement, the agency's response is going to say, no, no retirement, you're fired. That employee for whom that is important is not going to pursue his appeal challenging the involuntariness of the retirement. So I'm not concerned with setting a bad precedent for employees in that way. Well, he might if he knew that a back pay award was awaiting him, if he could point to a flaw in the involuntary retirement process, right? Yes, Your Honor. But again, this is all focused on the government providing misleading and accurate information. If the government just does its job, it gives proper advice or no advice at all, this case doesn't happen. But let me just go back to something that you raised earlier, Judge, the question of whether this is a due process violation and the answer is in Covington. Covington says, a decision made with blinders on based on misinformation or a lack of information cannot be binding as a matter of fundamental fairness and due process. So I did remember the quote. Okay. And it is Covington. All right. So yes, this court has taken and that I'm sure I haven't looked, but I'm sure that Covington has been cited for this proposition for numerous times. The point you raised, Your Honor, about Cheney, this is Cheney. Why is there a different result here than there is in Cheney? I think you also talked about Jarman, but let's talk about Cheney. Here's somebody whose clearance was suspended and the suspension process means we're looking in to see whether we should revoke your clearance. So his suspension, his clearance was suspended. Then they did an indefinite suspension saying you no longer have your clearance, so we're going to indefinitely suspend you. This court said, well, you didn't give him the proper procedure, the proper due process under 7513. So we're going to reverse and we're going to order that you be provided back pay. We're going to return you to your position. Even though he had no clearance, we're going to return you to that position and give you back pay until such time as they give you adequate constitutional process. That's all that we're asking in this case. And there's simply no justification. There's no justification in the board's rationale. There's certainly none in this court's precedence. Baldwin was a per curiam order. But he was, as your opponent pointed out, they did go through all of the internal procedures with respect to the revocation. They did. They did, Your Honor. Again, this goes to what this court observed in Stone, is that you are entitled and employees is a violation of due process. But the question, as I was talking to your friend, was having done that, having made the decision that after the internal hearings required by Egan and other cases, that the clearance because of the loss of clearance, he would be separated. And then what? This is what troubles me. In fact, having reached that decision, having perhaps orally told him, although they didn't give him the document, they withheld it so he could retire. Correct. They withheld it. Does a due process violation arise?  The due process violation arose by misinforming him about the consequences of his retirement, basically telling him that in order for you to preserve your retirement, you have to resign or retire, and that if you force us to fire you, you will lose your annuity. That's what the board held was a due process violation. So it's a different due process violation than in Cheney, than in these other cases In Cheney, it was due process in connection with the actual removal decision on the security clearance. The due process violation was that they didn't give Cheney notice of why they were revoking his clearance. Right. Sorry, my point is, in this case, there's a security clearance decision in this case, and there's no question that there was any due process violation in connection with that. Correct? That's correct. That's totally clean. And in terms of the papering up of the proposed removal decision, he was given notice and all of that. There's no due process problem there. The only due process issue is whether or not he was afforded the correct process in advising him with respect to the question of whether he should voluntarily resign. That's correct. That's the cabinet which Judge Bryson has asked whether that should truly be a due process concern or whether it's not. And that's what that did. And I believe Covington speaks to that, as I'm sure other cases of this Court. And I would just add that there's no such thing as a little bit of due process. This is due process. The Supreme Court has mandated, this Court has mandated on repeated occasions, if there's a due process violation, you must wipe the slate clean. There's no room to play this, well, you're better off. Then the question in this case is, what was the slate? I think that's the way the government's presenting the case, is to say the slate includes the proposed notice of removal that had been properly prepared and was properly lying on the desk. Isn't that our question? To say that, Your Honor, is to say that in Cheney, they could have said, well, okay, yeah, we didn't give you the reasons for it. But now, agency, go back and say, give him the reasons, consider his reasons. And if you would have made the same decision, then even though you've shown a due process violation, do nothing. That's what the Board did here. They said, go back, see if you would have made the same decision irrespective of the due process violation. And if you would, forget about it, no harm, no foul. That cannot be the law. The Supreme Court's decisions going back over 150 years mandate that due process be protected. And that protection, in the words of this Court, requires that the slate be wiped clean, that he be reinstated with back pay until such time as he's provided adequate and constitutionally correct process. Well, but with respect to the adequate and constitutionally protected process, it seems to me that he got all that the first time around. The only thing that was missing was the piece of paper having been handed to him. You wouldn't argue, would you, that if he got all of his rights to notice, a hearing, a right to be heard orally and in writing, and a decision was made that the failure to actually hand him the piece of paper, they tell him, you're going to be fired, you are fired. They just don't hand him the piece of paper. That's not a due process problem, is it? The due process problem was not. I understand. But now you're focusing on whether he's entitled to go back and have his due process cured. The only curative step would be handing him the piece of paper. Hand him the piece of paper. But is the failure to hand him the piece of paper the first time, is that a due process violation? Well, no, because he was coerced into retirement, and therefore it was irrelevant. But suppose they had said, okay, we're going to fire you, and they forgot to give him the piece of paper, but they told him you're fired, and they processed it. You wouldn't be arguing that's a due process violation, would you? No. No. I would not, Your Honor. So he wasn't deprived of due process the first time around with respect to the retirement issue. I mean, with respect to the firing and the removal issue. Because he wasn't fired. I understand. But everything that happened led up to a decision that he should be fired, and that decision, it seems to me, is not infected by a due process violation so far as I can see. That decision is not infected by it. You'll be fine. Yeah, I understand. But there's no little bit of due process. There's no precedent in this court that says you can have different remedies for different kinds of due process violation. In fact, Stone says exactly the opposite. Stone says exactly the opposite. The Supreme Court cases on due process, they're property seizures, there's custody cases, there's judgment execution. It's all the same. If there is a due process violation, the judgment is void. It is void for all purposes. It cannot be relied upon. And that's exactly what we have here, is a judgment that is being relied upon. He has found himself, he's entitled to status quo ante. He's found himself in status quo post. He's exactly where he would have been. And the question arises, well, he can't be better off. Who's better off in this situation? Mr. Morrison, who for, what, five years now has been battling this, has won, has vindicated his rights, and has been told, well, they can just pretend that they did it right. Or the government, who's violated this man's constitutional rights and walks away. Who's better off? Who came out ahead in that equation? And if the question is, who should we, it's imperfect. You're never going to be able to carve your relief out just so. Who's side should we err on? Should we err on the side of the wrongdoer or err on the side of the victim? I think it's clear. So I submit, Your Honor, that there simply is no precedent in this court that would support the board's decision. The precedent is completely against it. In Jarman, Your Honor, they said, in the first instance, let the board decide back bay. This court did not say, you don't get back bay. They just said, let the board decide in the first instance. There's no precedent for it. The precedent in this court and the Supreme Court is against it. Well, why is that then different from this case in saying, let the agency decide? Well, let the decision be made whether there's going to be any back bay. So in the first instance, so are you asking, as a question of jurisdiction? So the question is, is the question that we present here in this case and the reason that we're here now. No, it's part of what the status quo ante was. If the status quo ante was, is there going to be some back bay? And if so, how much? So, exactly. And the board has said, you can play this reconstruction game in ascertaining what the status quo ante is. And we say, no, you cannot. And we're coming here to this court now to say, not that we disagree with your calculation of back bay, but that you cannot go down that path. You cannot play the game of reconstruction and say what you would have done if you hadn't messed it up in affecting this man's entitlements under due process. That's the distinction, Your Honor. So if there are no further, I apologize for exceeding my time. No, thank you. The argument was helpful from both of you. Thank you. The case is taken under submission. Thank you.